# United States Court of Federal Claims
No. 14-198C
Filed: April 11, 2018

|  |  |
|---|---|
| BRIAN M. BOWLES, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

*David E. Bond*, Strouse & Bond PLLC, Burlington, VT, counsel for plaintiff.

*David M. Kerr*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for defendant.

## OPINION AND ORDER

**SMITH, Senior Judge**

     This matter is before the Court on defendant's Motion to Dismiss and Motion for Summary Judgment. Plaintiff, Brian M. Bowles, alleges that the government breached his employment contract by constructively terminating him from his position with the United States Postal Service ("USPS"), and that the government breached the implied covenant of good faith and fair dealing. The government filed a counterclaim, alleging that Bowles' default on the contract caused the government to sustain damages in procuring replacement services. The issues in this case are not simplistic, and genuine issues of material fact remain unresolved. After thorough review, the Court must deny defendant's Motion to Dismiss and Motion for Summary Judgment and proceed to trial.

    **I.**    **Background**

     The following facts are undisputed. On June 15, 2009, the USPS awarded Highway Contract Route 05061 to plaintiff, Brian M. Bowles, for mail delivery in the West Hartford, Vermont area. Appendix to Defendant's Motion to Dismiss and for Summary Judgment, ECF No. 27-1 (hereinafter "Appx. to D's Mot.") at 18. His contract was scheduled to run from July 1, 2009 through March 31, 2013. *Id.* at 19. As part of Bowles' routine duties, Bowles had regular interaction with the Postmaster for the Hartford and West Hartford, Vermont Post Office, Rosi O'Connell ("O'Connell"). Amended Complaint (hereinafter "Am. Compl.") at 4. O'Connell

served as Bowles' immediate supervisor. Defendant's Motion to Dismiss and for Summary Judgment (hereinafter "D's Mot.") at 6; Plaintiff's Response to Defendant's Motion to Dismiss and for Summary Judgment (hereinafter "P's Resp.") at 5. On April 23, 2012, Bowles had a conversation with USPS Contract Transportation Specialist Richard Deenihan, in which Bowles expressed his belief that his wages were being improperly garnished, and that Bowles desired to end his employment with USPS by the end of May 2012. Am. Answer at 4; P's Resp. at 11-12.

On April 26, 2012, Bowles reported to work at USPS for the last time. Defendant's Amended Answer (hereinafter "Am. Answer") at 8; Am. Compl. at 4-5. On the morning of April 26, 2012, O'Connell had ordered Bowles to hand over his scanner and ID badge. D's Mot. at 2-3; Am. Compl. at 4-5. Bowles refused to do so. *Id.* Immediately after this interaction, Bowles communicated with the Manager of Post Office Operations, Sal Vitagliano ("Vitagliano"), O'Connell's immediate supervisor, concerning the events of that morning. *Id.* Vitagliano ordered Bowles to return from his route to the Hartford Post Office for further discussion. *Id.* Bowles verbally declined the order, and did not return to the Hartford Post Office, out of fear of imminent adverse action. *Id.*

When Bowles did not return to the Hartford Post Office as directed, USPS placed him on "emergency suspension" from his post, due to O'Connell's allegations that Bowles had physically assaulted her that morning. D's Mot. at 2-3. At some time on April 26, 2012, O'Connell filed a police report alleging that Bowles had beat her with his mail scanner. P's Resp., Exhibit 3 at 39. Bowles did not return to work following the events of April 26, 2012. D's Mot. at 3; P's Resp. at 19. Bowles was charged with a misdemeanor simple assault in Vermont Superior Court, but was acquitted in December 2013. P's Resp., Exhibit 3 at 54-56.

On December 8, 2017, the government filed a motion to dismiss and for summary judgment. In its Motion, the government first argues that the Court lacks jurisdiction to consider Bowles' claims of constructive termination. D's Mot. at 5-7. Second, the government argues that it is entitled to summary judgment on the contract claims. Specifically, the government states that "Bowles assertion that on April 26, 2012, he told the Postal Service that he 'quit' is an anticipatory repudiation of his contractual obligations." *Id.* at 14. "An anticipatory repudiation occurs . . . when an obligor communicates to an obligee that he will commit a breach in the future." *Franconia Associates v. United States*, 536 U.S. 129, 139 (2002). Plaintiff filed his Response to defendant's Motion on January 5, 2018. The government filed its Reply in Support of its Motion on January 19, 2018. A status conference was held on March 28, 2018, at which time the parties indicated that they wished to proceed without Oral Argument on defendant's Motion. As such, defendant's Motion is fully briefed and ripe for review.

**II.     Discussion**

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States. . .in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive

right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

### A. Defendant's Motion to Dismiss

It is well-settled that a complaint should be dismissed under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss brought under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must inquire, however, whether the complaint meets the "plausibility" standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560, 563 (2007) (hereinafter "*Twombly*") (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (hereinafter "*Iqbal*") (quoting *Twombly*, 550 U.S. at 570).

The government contends that, while the Court does have jurisdiction to review the contracting officer's default termination decision, the Court does not have jurisdiction to review plaintiff's "constructive termination" allegations because Bowles failed to enter a written submission to the contracting officer concerning the "constructive termination" and fair dealing claims necessary to invoke the Court's jurisdiction under the Contract Disputes Act. 41 U.S.C. § 7103(a)(1), (2); D's Mot. at 6. Plaintiff responds by arguing that the constructive termination is not an individual claim, but rather, "theor[ies] of preceding breach." P's Resp. at 3. Plaintiff then goes on to assert that the "breach of the implied covenant of good faith and fair dealing is not only an affirmative aspect of Mr. Bowles claim for breach of contract, but also a defense to the government's claim." *Id*. at 16. The Court is persuaded by plaintiff's classification of the constructive termination and fair dealing allegations, and, thus, finds that plaintiff's Complaint states a plausible claim to relief.

### B. Defendant's Motion for Summary Judgment

Summary judgment is appropriate when the evidence indicates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 250. In determining the propriety of summary judgment, a court will not make credibility determinations and will draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

In order to fairly decide this case and address its legal questions, the Court must first make determinations as to a number of material facts still at issue. While this Court acknowledges that it is always more efficient to resolve a case on a motion for summary judgment, the legal system and its underlying rationale make justice a more important value than mere efficiency, though efficiency is also an important value. As this Court has previously stated, summary judgment is only appropriate when the evidence indicates that there is "no genuine dispute as to any material fact." RCFC 56(c); *Anderson*, 477 U.S. at 247-48 (1986).

The Court believes that genuine issues of material fact remain unresolved, and is disinclined to grant a motion for summary judgement based on a premature factual record. As such, defendant's Motion for Summary Judgment must be denied, and, absent settlement, this case must proceed to trial.

### III.  Conclusion

For the reasons set forth above, defendant's MOTION to dismiss and MOTION for summary judgment are **DENIED**. The parties are **ORDERED** to file a Joint Status Report on or before May 11, 2018, proposing a procedural schedule.

**IT IS SO ORDERED.**

          s/ *Loren A. Smith*
          Loren A. Smith,
          Senior Judge